Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche Manning | Sitting Judge if Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| CASE NUMBER | 00 C 2855 | DATE | 11/5/2001 |
| CASE TITLE | SmithKline Beecham, et al. vs. Pentech Pharmaceuticals, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Plaintiffs' Motion to Compel Production of Communications for Which Defendants Assert Attorney-Client Privilege or Work Product Immunity is granted in part and denied in part.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | NOV 0 ... 2001 | |
| | Notified counsel by telephone. | | date docketed | 135 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | | |
| | | courtroom deputy's initials | DOCKETING NOV -5 AM 11:36 date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SMITHKLINE BEECHAM CORPORATION and BEECHAM GROUP, p.l.c., | ) ) ) |
| Plaintiffs, | ) ) Case No. 00 C 2855 |
| v. | ) ) Judge Blanche M. Manning ) |
| PENTECH PHARMACEUTICALS, INC. and ASAHI GLASS CO., LTD. | ) Magistrate Judge Nan R. Nolan ) ) |
| Defendants. | ) ) |

DOCKETED
NOV 0 6 2001

## MEMORANDUM OPINION AND ORDER

This patent infringement action is before the Court on Plaintiffs' Motion to Compel Production of Communications for Which Defendants Assert Attorney-Client Privilege or Work Product Immunity. In their motion, Plaintiffs SmithKline Beecham, Inc. and Beecham Group, p.l.c. (collectively "SB"), claim that Defendant Pentech Pharmaceuticals, Inc. ("Pentech") improperly withheld from production many of their documents; objected to the production of documents from two third parties; and prevented deposition testimony about two meetings. SB further claims that Defendant Asahi Glass Co., Ltd. ("Asahi") improperly withheld from production many of its documents.

For the reasons explained below, Plaintiffs' Motion is GRANTED in part and DENIED in part.

1

## DISCUSSION

I. <u>**Attorney-Client Privilege**</u>

For procedural issues in a patent case that are not unique to patent law, courts are directed to "'apply the law of the circuit in which the district court sits.'" *McCook Metals L.L.C. v. Alcoa Inc.*, 192 F.R.D. 242, 251 (N.D. Ill. 2000) (*quoting In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800 (Fed. Cir. 2000)). Because SB's motion involves general issues of privilege, the law of the Seventh Circuit applies. The Seventh Circuit test to determine attorney-client privilege is: (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected from disclosure by himself or by the legal advisor, (8) except the protection may be waived. *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir. 1997).

The privilege is narrowly construed in this Circuit, and communications to an attorney are not always cloaked with the privilege. *SmithKline Beecham Corp. v. Apotex Corp.*, 193 F.R.D. 530, 534 (N.D. Ill. 2000). For example, the fact that an attorney has requested or received documents does not, by itself, mean the documents are privileged. *Blanchard v. EdgeMark Financial Corp.*, 192 F.R.D. 233, 238 (N.D. Ill. 2000); *IBJ Whitehall Bank & Trust Co. v. Cory & Assocs., Inc.*, No. 97 C 5827, 1999 WL 617842, at *4 (N.D. Ill. Aug. 12, 1999). In determining whether a document is subject to the attorney-client privilege, the primary question is whether "the document in question reveal[s], directly or indirectly, the substance of a confidential attorney-client communication." *SmithKline*, 193 F.R.D. at 534. Communication of business or technical information not involving legal advice is not privileged. *McCook*, 192 F.R.D. at 252.

The attorney-client privilege can be waived if the communication is voluntarily disclosed to

a third party. *Blanchard*, 192 F.R.D. at 236. However, an exception to the waiver rule may exist if (1) the disclosure to the third party is for the purpose of assisting the attorney in rendering legal advice or (2) the third party shares a common legal interest with the party claiming the privilege. *Id.* at 236-37. "The [common interest] rule can apply to any two parties who have a 'common interest' in current or potential litigation, either as actual or potential plaintiffs or defendants." *IBJ Whitehall*, 1999 WL 617842, at *3, n.1.

In this case, Pentech claims the following documents are protected from disclosure by the attorney-client privilege:[1] PN11-14, 16-24; IO(P)6; and OR(P)2-4.[2] Asahi claims the privilege applies to all of its withheld documents, AS1-11.

SB argues that Pentech cannot claim the attorney-client privilege for (1) documents disclosed to third parties (PN17-18, 20-22; AS4, 11; IO(P)6; and OR(P) 2-4); (2) documents that relate to routine technical issues (PN17, 20, 22, 24; IO(P)6); and (3) documents that exhibit no attorney involvement (PN18; OR(P)4).

Pentech responds that disclosure of certain documents to third parties did not waive the attorney-client privilege because Pentech and Asahi share a common legal interest, and the disclosure to third parties was necessary to assist Pentech's attorneys in rendering legal advice.

---

[1]Pentech's privilege log contained additional attorney-client privilege claims, but to reduce the number of issues in this case, Pentech dropped their privilege claims as to 14 documents. (*See* Defs.' Mem. in Opp'n at 3, n. 2.)

[2]For the sake of convenience and clarity, the Court will use the document identification system the parties used in their briefs. Documents designated "PN" are from Pentech's privilege log; "AS" documents are from Asahi; "IO" documents are from the University of Iowa, a third party; and "OR" documents are from Oread, a third party.

Pentech further argues that documents SB describes as involving "routine technical issues" were in fact related to legal advice.

## II. <u>Work Product Doctrine</u>

The work product doctrine is distinct from, and broader than, the attorney-client privilege. *Blanchard*, 192 F.R.D. at 237; *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 145 F.R.D. 84, 86 (N.D. Ill. 1992). The work product doctrine protects "documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3).

The threshold determination of work product generally is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared for or obtained *because of* the prospect of litigation." *North Shore Gas Co. v. Elgin, Joliet & Eastern Ry. Co.*, 164 F.R.D. 59, 61 (N.D. Ill. 1995) (*quoting Binks Mfg. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109, 1119 (7th Cir. 1983)) (emphasis added); *Allendale*, 145 F.R.D. at 86. Therefore, documents that were prepared for other reasons, such as documents created in the ordinary course of business, cannot be withheld as work product. *See Allendale*, 145 F.R.D. at 87 (holding that documents prepared in the ordinary course of business are not work product even if litigation is imminent or ongoing); *see also In re General Instrument Corp.*, 190 F.R.D. 527, 530 (N.D. Ill. 2000) ("[A] document prepared for both legal and non-legal review is not privileged."); *IBJ Whitehall*, 1999 WL 617842, at *4 (*quoting Loctite Corp. v. Fel-Pro, Inc.*, 667 F.2d 577, 582 (7th Cir. 1981)) (holding that only documents "'primarily concerned with legal assistance'" are cloaked with immunity).

Moreover, to be subject to work product immunity, documents must have been created in response to "a substantial and significant threat" of litigation, which can be shown by "objective facts establishing an identifiable resolve to litigate." *Allendale*, 145 F.R.D. at 87 (citations omitted). Documents are not work product simply because "litigation [is] in the air" or "there is a remote possibility of some future litigation." *McCook*, 192 F.R.D. at 259; *IBJ Whitehall*, 1999 WL 617842, at *5. "The articulable claim likely to lead to litigation must pertain to this particular opposing party, not the world in general." *McCook*, 192 F.R.D. at 259.

The protection of the work product doctrine may be waived "where the protected communications are disclosed in a manner which 'substantially increases the opportunity for potential adversaries to obtain the information.'" *Blanchard*, 192 F.R.D. at 237 (*quoting Behnia v. Shapiro*, 176 F.R.D. 277, 279 (N.D. Ill. 1997)); *see also Minnesota Sch. Bds. Ass'n Ins. Trust v. Employers Ins. Co. of Wausau*, 183 F.R.D. 627, (N.D. Ill. 1999) ("A waiver only occurs, however, if the disclosure to a third party 'is inconsistent with the maintenance of secrecy from the disclosing party's adversary.'").

An opponent may discover a party's work product "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3). Furthermore, if the work product involves "the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation," the immunity from production is "for all intents and purposes absolute," whether or not the party seeking discovery has demonstrated a substantial need. Fed. R. Civ. P. 26(b)(3); *Scurto v. Commonwealth Edison Co.*, No. 97 C 7508, 1999 WL 35311, at *2 (N.D. Ill. Jan.

11, 1999).

Pentech alleges documents PN1-12, 15, 17-18, 20-31; AS1-11; IO(P) 1-42; and OR(P) 1, 4, are subject to work product immunity. SB challenges the immunity claim, arguing that Pentech has failed to establish that the documents were prepared in anticipation of litigation, and that documents involving testing or routine investigations were created in the ordinary course of business and therefore are not work product. Pentech answers by stating that when a generic drug company decides to compete with an established drug maker, litigation "is a virtual certainty," and communications are therefore made in anticipation of litigation.

In response to SB's argument that many of Pentech's withheld documents pertain to technical analysis and therefore are not work product, Pentech argues that Iowa personnel were involved in two research projects, only one of which involved product development. Pentech goes on to state that "[i]f Pentech is required to go into greater detail about the nature of [the research project not involving product development], Pentech would be forced to disclose the very information that the work-product doctrine seeks to protect." (Defs.' Mem. in Opp'n at 12.)

## III. **Findings**

This Court has reviewed the briefs submitted by the parties,[3] the relevant case law, and the documents at issue, which were submitted *in camera* pursuant to the Court's request. Following are the Court's findings as to the application of the privilege to each of the documents Pentech and Asahi seek to withhold:

---

[3]The parties' briefs included many arguments relating to the sufficiency of the Defendants' privilege logs. Because the Court chose to view the documents *in camera*, the privilege logs' sufficiency is no longer relevant and arguments related to sufficiency are not included in this Opinion.

6

### *Documents PN1-10, 15, 17, 20-23, 25-27, 29-31[4]; IO(P)2-5, 7-26, 28-38, 40-42:*

The Court does not dispute that Pentech believed litigation with SB was likely or even probable at the time these studies and analyses were commissioned. Pentech, however, must demonstrate the documents in question were created *for the purpose of litigation*, not in the ordinary course of business. Pentech was required, for purely business reasons, to research the composition and properties of the paroxetine hydrochloride capsules for which it submitted an Abbreviated New Drug Application ("ANDA") to the Food and Drug Administration. Therefore, research conducted before the ANDA was submitted was not done solely for the purpose of litigation, and any documents reflecting that research were not created for litigation, no matter how likely it was that SB would pursue litigation after Pentech filed its ANDA. Accordingly, that research must be produced. *See SmithKline Beecham Corp. v. Apotex Corp.*, No. 98 C 3952, 2000 WL 116082, at *4 (N.D. Ill. Jan. 24, 2000). For the same reasons, Pentech cannot bar testimony regarding the September 1997 and October 1998 meetings with third-party researchers.

### *Document PN11:*

The document is a draft letter from client to attorney and was not sent to third parties. The letter also expressly demonstrates an intention to keep the communication confidential. Therefore, it may be withheld as privileged.

### *Document PN12:*

Page number PEN8252 may be withheld as an attorney-client communication. The remainder of the document, a letter from the FDA and materials sent to or received from SB, is

---

[4]Document PN31 (and one page of Document PN29) were not included in the materials submitted to the Court. The Court's decision is based on its review of similar documents and of the descriptions included in Pentech's privilege log.

clearly not privileged and must be produced.

### *Document PN13:*

The letter is a communication from the client to his attorney for the purpose of legal advice and may be withheld as privileged.

### *Documents PN14, 16:*

The communications are from attorney to client, not client to attorney, and are merely transmissions of technical information, not legal advice. Therefore, the documents are not privileged and should be produced. *See McCook*, 192 F.R.D. at 252.

### *Document PN18:*

The document is a draft letter and includes handwritten notes from an attorney. It may be withheld as an attorney-client communication and work product.

### *Document PN19:*

The document is merely a transmission of a public document from attorney to client. It does not include legal advice and reveals no client communications, so it must be produced.

### *Document PN24:*

It is not clear from the privilege log or from the document itself whom the recipient attorney represents. In addition, the document does not appear to involve legal advice or a request for legal advice from counsel. Therefore, it must be produced.

### *Documents PN28, IO(P)1, 6, 27, 39:*

As explained above in discussing Documents PN1-10 *et al.*, Pentech cannot claim that scientific analyses created before the ANDA was filed were prepared solely for the purpose of litigation. However, after the ANDA was filed and SB was notified of Pentech's intent to market

8

a competitive generic drug, litigation with "this particular opposing party," *McCook*, 192 F.R.D. at 259, was anticipated. Moreover, the kinds of tests performed, the materials used in the tests, and the specific compounds tested may reveal the attorney's strategy in defending the infringement claim. *See Vardon Golf Co., Inc. v. BBMG Golf Ltd.*, 156 F.R.D. 641, 648 (N.D. Ill. 1994). Finally, SB has made no claim of a substantial need for the materials. These documents, which reflect experiments and analyses created or performed by Pentech, its attorneys, and/or its consultants after the ANDA was filed, are subject to work product immunity and may be withheld.

### *Document OR(P)1:*

The document may be withheld as work product because it reveals an attorney's litigation strategy. The work product immunity was not waived by disclosing the information to a third party, because disclosure to Oread did not increase the opportunity for potential adversaries to obtain the information and was not inconsistent with the maintenance of secrecy. The nature of the document, coupled with the parties' relationship, indicate that Pentech intended to maintain the confidentiality of the document. Moreover, while not dispositive, Pentech's claim that the parties had executed a confidentiality agreement "militates against a finding of a waiver [of work product immunity]." *Blanchard*, 192 F.R.D. at 237.

### *Document OR(P)2:*

The document reflects a meeting concerning litigation issues and contains privileged information. The document lists the meeting participants and summarizes privileged communications, and therefore it may be withheld. *See SmithKline*, 193 F.R.D. at 538; *McCook*, 192 F.R.D. at 252.

### *Documents OR(P)3-4:*

The documents include privileged communications and disclosure of the communications to Oread was necessary to assist Pentech's attorney in rendering legal advice. They may be withheld.

### *Documents AS1- 5:*

These documents are apparently communications between Asahi Tokyo and its Japan-based attorneys at Morrison & Foerster LLP. If the documents are privileged under Japanese law, "comity requires us to apply that country's law to the documents at issue." *McCook*, 192 F.R.D. at 256. The defendants have the burden to establish that under Japanese law, the communications contained in Documents AS1-5 are protected by the attorney-client privilege. *See id.* at 256-58. Pentech's Memorandum in Opposition to Plaintiffs' Motion to Compel provides no support for the argument that these documents are privileged under the applicable law of Japan. Pentech must submit to the Court proof that the documents are privileged, through case law and/or an affidavit of an attorney familiar with Japanese law regarding attorney-client privilege, stating the relevant law and applying it to the communications at issue. If Pentech cannot meet its burden of proving the documents are privileged within 21 days, they must be produced.

Additionally, several pages from these documents and others withheld by Asahi are wholly or partly in Japanese. Because the Court cannot review the contents of the documents, Pentech has not met its burden of showing the attorney-client privilege applies to these pages. Unless Pentech provides the Court with English translations of the Japanese portions of the documents within 21 days, those pages must be produced. The pages include: AS1; AS2 (page number AGC6040); AS3 (pages 1 and 3-5 of the document; the Japanese language pages are not numbered); AS4; and AS5 (AGC6044).

***Document AS6:***

The document is a privileged communication between Asahi and its American attorney regarding patent issues and may be withheld.

***Document AS7:***

Page AGC6056 of Document AS7 is in Japanese and, as explained above, it must be produced if Pentech does not provide the Court with an English translation. Pages AGC6057-66 of the document contain privileged communications with an American attorney regarding a patent application and a proposed draft of a submission to the United States Patent & Trademark Office, which is also privileged. *See In re Spalding*, 203 F.3d at 805-06. Those pages may be withheld.

***Document AS8:***

Page AGC6067 is in Japanese and must be produced if Pentech does not provide the Court with an English translation. Pages AGC6068-69 are privileged communications with an American attorney regarding patent issues and therefore may be withheld. Pages AGC6070-84 are documents prepared for submission to the United States Patent & Trademark Office. Because there is no expectation of confidentiality in these documents, they are not privileged and must be produced. *See McCook*, 192 F.R.D. at 252.

***Documents AS9-10:***

The documents contain privileged communications with an American attorney regarding patent issues and therefore may be withheld. However, pages AGC6085-86 and AGC6088 are partly in Japanese and those portions must be produced if Pentech does not provide the Court with an English translation.

***Document AS11:***

The document is a confidential communication from an American attorney to Pentech regarding legal advice concerning patents. The document maintains the privilege even though it was disclosed to Asahi, because Asahi and Pentech share a common legal interest. The entire document may be withheld.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs' Motion to Compel Production of Communications for Which Defendants Assert Attorney-Client Privilege or Work Product Immunity is GRANTED in part and DENIED in part.

E N T E R:

*Nan R. Nolan*
**Nan R. Nolan**
**United States Magistrate Judge**

Dated: 11 - 5 - 2001