Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Richard A. Posner | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2855 | **DATE** | 5/8/2003 |
| **CASE TITLE** | SmithKline Beecham et al vs. Pentech Pharmaceuticals et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Opinion granting to the motion to dismiss (Doc 334-1) and motion for a protective order sealing certain portions of their settlement agreement (Docs 338-1 & 345-1).

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAY 9 2003 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| SCT | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE
# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF
# ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| SMITHKLINE BEECHAM CORP. and BEECHAM GROUP, P.L.C., | )<br>)<br>) |
| *Plaintiffs*, | ) Nos. 00 C 2855, 5831<br>) |
| *v*. | ) **Richard A. Posner**,<br>) *Circuit Judge*. |
| PENTECH PHARMACEUTICALS, INC., and ASAHI GLASS CO., LTD., | )<br>)<br>) |
| *Defendants*. | ) |

## OPINION*

These consolidated patent infringement suits were assigned to me under the authority of 28 U.S.C. § 291(b) because of their close relation to a previous patent infringement suit that had been assigned to and tried by me, *SmithKline Beecham Corp. v. Apotex Corp.*, No. 98 C 3952, 2003 WL 728889, ___ F. Supp. 2d ___ (N.D. Ill. Mar. 3, 2003), involving the identical plaintiffs and the identical patent. The patent (U.S. patent 4,721,723—"723" for short) is for crystalline paroxetine hydrochloride hemihydrate, a pharmaceutical compound that the plaintiffs (two affiliated corporations that I shall refer to collectively as "SmithKline") sell under the trade name Paxil. The present suits (which, for simplicity, I shall treat as one) were filed in 2000 and charge that Pentech Phar-

---

* In explanation of the rulings that I made on May 2, 2003, in open court, and that were embodied in an order issued the same day.

maceuticals, a manufacturer of generic pharmaceutical drugs, is producing—though not yet selling in the United States, because it has not yet obtained the Food and Drug Administration's approval of its Abbreviated New Drug Application—an amorphous paroxetime hydrochloride, in capsule form, that infringes patent 723. The active ingredient for Pentech's drug is made by a Japanese company, codefendant Asahi, that SmithKline charges has induced Pentech's infringement of patent 723, in violation of 35 U.S.C. § 271(b).

After extensive discovery, the parties entered into negotiations that have resulted in a settlement of SmithKline's dispute with Pentech. A firm that has a contractual relation with Pentech, Par Pharmaceutical, Inc., is also a party to the agreement. Had all three parties to the lawsuit—SmithKline (remember that I'm treating the two plaintiffs, which are affiliates, as one, and that Par is not a party to the suit), Pentech, and Asahi—signed a stipulation of dismissal, the dismissal of the suit would have been automatic. No judicial action would have been required and neither the stipulation nor the settlement agreement motivating it would have been submitted to the court. Fed. R. Civ. P. 41(a)(1)(ii). But since only SmithKline and Pentech settled, Asahi refused to sign such a stipulation, and as a result SmithKline, pursuant to Rule 41(a)(2), has moved for an order dismissing its suit without prejudice (dismissals under Rule 41(a) are with an immaterial exception without prejudice unless otherwise agreed by the parties or ordered by the court) "upon such terms and conditions as the court deems proper." The rule does not permit the court to grant dismissal if an objecting defendant has filed a counterclaim, as Asahi has, and if in addition the counterclaim cannot remain pending in the court as an independent action; but Asahi's counterclaim can, so this is not an objection to my granting the order to dismiss.

According to a press release issued by the settling parties, the settlement agreement on which the motion to dismiss is based (the agreement itself has not been made public) provides that Pentech shall be authorized to sell Paxil, though not under the Paxil trade name, in Puerto Rico beginning immediately

and in the rest of the United States as soon as any other generic version of paroxetine hydrochloride comes on the market. Apotex, the defendant in the previous suit that I mentioned, expects to be the first company to market such a generic and it has moved to intervene in the present suit to oppose the motion to dismiss on the ground that the settlement agreement in effect makes unbranded Paxil a "fighting brand" that will thwart Apotex's effort to sell its own unbranded paroxetine hydrochloride. Asahi opposes the motion to dismiss on the ground that by permitting Pentech to obtain its paroxetine hydrochloride from SmithKline rather than from Asahi, the agreement forecloses Asahi from competing with SmithKline, and on the further ground that a provision of the license agreement that extends Pentech's royalty obligation beyond the expiration of patent 723 is patent misuse under *Brulotte v. Thys*, 379 U.S. 29, 32 (1964), a much-criticized decision that remains, however, the law. *Scheiber v. Dolby Laboratories, Inc.*, 293 F.3d 1014, 1017–18 (7th Cir. 2002). The settling parties, noting that the license agreement is not limited to patent 723 but embraces every SmithKline patent that might be a basis for charging Pentech with infringement, respond to the *Brulotte* charge by citing decisions that in the words of the Supreme Court in *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 138 (1969), refuse to invalidate on the authority of the *Brulotte* case "a mere license provision measuring royalties by the licensee's total sales even if, as things work out, only some or none of the merchandise employs the patented idea or process, or even if it was foreseeable that some undetermined portion would not contain the invention. It could easily be...that the licensee as well as the patentee would find it more convenient and efficient from several standpoints to base royalties on total sales than to face the burden of figuring royalties based on actual use." A similar case, decided before *Brulotte, Automatic Radio Mfg. Co. v. Hazeltine Research, Inc.*, 339 U.S. 827 (1950), had been distinguished in *Brulotte* as follows: "The petition for certiorari [in *Automatic Radio*] did not in the questions presented raise the question of the effect of the expiration of any of the patents on the royalty agreement." 379 U.S. at 33 n. 5. Thus, neither *Ha*-

*zeltine* decision resolves a case in which some of the patents expire before the license agreement, yet the royalty is unchanged.

Essentially, then, Apotex and Asahi ask me to deny the motion to dismiss on the ground that the settlement agreement that underlies the motion is either an antitrust violation or a patent misuse. Apotex has been handicapped in formulating its objections to the motion by the fact that it has not seen the actual settlement agreement but only the description of it in the press release and maybe the description found in a publicly disseminated transcript of an interview with Par by securities analysts in which the agreement was further, but still only sketchily, described. The agreement has, however, been submitted to me under seal, and I have read it and discussed it, also in camera, with the settling parties and with Asahi's outside counsel, who the settling parties authorized to read it.

I have concluded that I have no authority to deny the motion to dismiss SmithKline's suit against Pentech on the basis of concerns, however substantial they may be (an issue on which I express no view), that the motion is based on a settlement agreement that may be contrary to public policy as expressed in the antitrust laws, the doctrine of patent misuse, or any other source of policy; that may in fact be illegal. The reason for my compelled forbearance lies in the structure of Rule 41. Had Asahi signed a stipulation of dismissal, the suit would have been dismissed without my seeing the agreement and without Apotex's having had any opportunity to oppose dismissal. Rule 41(a)(1)(ii). The only reason SmithKline had to file a motion to dismiss was that Asahi refused to go along with dismissal, and this implies that the only reason that court action is required to allow a plaintiff to dismiss his case when not all defendants agree to the dismissal is that dismissal might injure another party to the suit, a party that has not agreed to the settlement that may have induced the plaintiff to want to drop the suit. (Of course, there might be no settlement; the plaintiff might just have decided to abandon the suit. But that is not our case.) Rule 41(a)(1)(ii) gives only one illustration—the defendant filed a counterclaim that he will have to refile as

a separate suit (if he can—the statute of limitations may have run) should the plaintiff's suit be dismissed. But neither the wording nor the sense of the rule implies that this is the only situation in which the court can refuse to grant an unconditional dismissal at the plaintiff's behest. Another and even more common case is where the suit that the plaintiff asks to dismiss is frivolous or otherwise abusive, and though the defendant obviously has no objection to its being dismissed he wants the dismissal to be with prejudice or to be conditioned on reimbursement of his attorneys' fees. *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 177–78 (7th Cir. 1994); *Ratkovitch v. Smith Kline*, 951 F.2d 155, 157–59 (7th Cir. 1991); *Grover by Grover v. Eli Lilly & Co.*, 33 F.3d 716, 718–19 (6th Cir. 1994); *Kern v. TXO Production Corp.*, 738 F.2d 968, 970 (8th Cir. 1984).

But the motion can be denied only if a party is hurt by dismissal, or by *unconditional* dismissal as in the attorneys'-fees case, the harm there being that had the case gone to judgment the defendant could have moved for an award of attorneys' fees; the plaintiff must not be allowed to short circuit this right by dismissing the suit without cost when he sees the handwriting on the wall. This principle, clearly stated in such cases as *Marlow v. Winston & Strawn*, 19 F.3d 300, 303 (7th Cir. 1994), and *United States v. Outboard Marine Corp.*, 789 F.2d 497, 502 (7th Cir. 1986); see also *Quad/Graphics, Inc. v. Fass*, 724 F.2d 1230, 1232–33 (7th Cir. 1983); cf. *Agretti v. ANR Freight System, Inc.*, 982 F.2d 242, 246–48 (7th Cir. 1992), is inherent, as I have said, in the structure of Rule 41(a). (Incidentally, the reason I have cited Seventh Circuit cases, even though any appeal from this decision will go to the Federal Circuit because this is a patent infringement suit, is that the Federal Circuit applies the law of the circuit in which the district court is located to procedural matters that are not unique either to patent law or to appellate as distinct from trial procedure. See *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1574–75 (Fed. Cir. 1984) (per curiam); *Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 858 (Fed. Cir. 1991). The standard for deciding whether to dismiss a suit on motion

by the plaintiff satisfies these criteria for applying local circuit law.)

Asahi acknowledges that only harm to a nonconsenting party is a permissible ground for the court's refusing to grant a plaintiff's motion to dismiss without imposing conditions. For it states that "the party opposing the motion to dismiss must demonstrate 'plain legal prejudice' as a potential result of the dismissal" and that "the determination of 'plain legal prejudice' involves evaluating the effect of the settlement on the non-moving party's legal rights." But inconsistently it bases its opposition to SmithKline's motion to dismiss not on any such "plain legal prejudice" *from the dismissal of the suit* but on the alleged illegality of the settlement agreement that motivated the motion. A nonparty to a settlement agreement no more has standing to challenge the legality of the agreement than a nonparty to any other contract would have, *Agretti v. ANR Freight System, Inc., supra,* 982 F.2d at 246–48—unless he is hurt by the agreement. Even then there is a question whether Rule 41(a)(2) is the proper vehicle for such a challenge. Maybe so, as suggested (no stronger word is possible) in *Quad/Graphics, Inc. v. Fass, supra,* 724 F.2d at 1233–34, and held in *Waller v. Financial Corp. of America,* 828 F.2d 579, 582–83 (9th Cir. 1987), which listed the following situations in which a partial settlement might cause "plain legal prejudice" to a nonsettling defendant: "a partial settlement which purports to strip [a nonsettling defendant] of a legal claim or cause of action, an action for indemnity or contribution for example...; a settlement that invalidates the contract rights of one not participating in the settlement...; [or] the proposed settlement would eliminate [a nonsettling defendant's] right to assert an *in pari delicto* defense." *Id.* at 583.

It will clarify analysis to consider separately the possible effects on Asahi of the dismissal of SmithKline's suit against Pentech and of the settlement agreement that induced that dismissal. At argument Asahi's lawyer was able to give only two examples of how the dismissal might harm his client. The first was that Pentech would cease cooperating with Asahi in the provision of documents and witnesses that might assist

Asahi in its defense and counterclaims. This is true, but it is true in every case in which a plaintiff settles with a defendant; the defendant ceases to have an incentive to cooperate with his codefendants. That is the kind of inevitable adverse consequence for the nonsettling defendant that the cases make clear does *not* justify the court in denying a plaintiff's motion to dismiss. E.g., *Quad/Graphics, Inc. v. Fass, supra,* 724 F.2d at 1233–34. Rule 41(a)(2) would be unusable otherwise in cases of partial settlement. Asahi can obtain the witnesses and documents it needs by subpoena.

Second, Asahi contends that Pentech will be less willing to indemnify it for the expenses of the litigation once Pentech is out of the case. No doubt that is true. But either Asahi has an enforceable contract with Pentech to indemnify it or it does not (there is a contract but there is a question whether it has expired). In the former case it can enforce the contract even if Pentech is dismissed from the case, and in the latter case it has no right to or reasonable expectation of indemnification. A related concern of Asahi's is that the settlement agreement requires Par to indemnify SmithKline for the expense of so much of the continued litigation against Asahi as grows out of the settlement, a deal that could induce SmithKline to pull out all the stops in fighting Asahi. But that would equally be true if SmithKline had bought legal insurance; and anyway SmithKline is a formidable defender of its patent rights even when it is not being indemnified for the expense of defending them.

The question whether the settlement agreement might cause "plain legal prejudice" to Asahi by virtue of entitling SmithKline to indemnification of its legal expenses by Par is at least the kind of question that *Waller* suggests can properly be raised by the nonsettling defendant in a Rule 41(a)(2) proceeding. What cannot be raised in such a proceeding is the question whether the settlement agreement has inflicted an antitrust or other tortious injury on the nonsettling defendant. That would turn the proceeding into an antitrust litigation. The tail would be wagging the dog. The line runs between settlement agreements that are claimed to hamstring the nonsettling defendants' defenses or counterclaims and settlement agreements

that raise questions of substantive illegality. The proper remedy for Asahi, which seeks primarily to press questions of the latter sort, is the one it is alternatively pursuing, namely amending its counterclaim to add a count challenging the settlement agreement as an antitrust violation that will injure it. The same thing is true with respect to Apotex, and so its motion to intervene is denied. SmithKline's motion to dismiss its suit against Pentech without prejudice is granted.

I hope I have made sufficiently clear, however, that the granting of a motion to dismiss under Rule 41(a)(2) does not imply judicial approval of the underlying settlement agreement. The grant of the motion implies no view of the merits of the agreement and confers no immunities on the settling parties. It is not as if the settlement agreement were embodied in a consent decree. Such a decree is judicially enforceable and the judge in issuing it must determine that it does not offend public policy, as by harming third parties, before he can approve it. E.g., *Donovan v. Robbins*, 752 F.2d 1170, 1176 (7th Cir. 1985). A settlement agreement that merely motivates the dismissal of a suit is not a judicial order, and the dismissal does not insulate it from legal challenge.

That leaves for my consideration only the settling parties' motion to maintain certain provisions of the settlement agreement under the seal of this court. Although documents submitted to a court are presumptively available for public inspection in order to facilitate public monitoring of the courts, *Jessup v. Luther*, 277 F.3d 926, 929 (7th Cir. 2002); *Union Oil Co. v. Leavell*, 220 F.3d 562, 567–68 (7th Cir. 2000), portions of documents that are shown to contain trade secrets, or other information that would cause undue private or public harm if disclosed, as by invading personal privacy gratuitously, may be kept under seal. *Jessup v. Luther, supra*, 277 F.3d at 929; *Citizens First National Bank v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). In the case of a commercial document, such as the settlement agreement in this case, which is essentially a license to distribute a patented product, the usual justification for confidentiality is the presence of trade secrets, but the term is somewhat confining. It suggests ideas or inventions having

commercial value and reflecting investment by the firm seeking to maintain secrecy, such as a customer list or a secret manufacturing process. There is nothing of that sort in the license agreement. The reason for secrecy is that it contains information about terms and conditions of the distributorship arrangement that the licensing agreement creates that might give other firms an unearned competitive advantage—unearned because the issue of public disclosure arises from the adventitious circumstance of the agreement's having become caught up in litigation and as a result having become filed in court.

I have read the agreement and I agree that the portions that the settling parties have redacted (the polite word for deleted), other than those disclosed in this opinion, contain legitimately confidential information to which their competitors should not be entitled and which the American public does not need to know in order to evaluate the handling of this litigation by the judiciary. The motion to seal portions of the agreement is therefore granted, subject to the qualification regarding redacted matter disclosed in this opinion—but there the cat is out of the bag, so there is no need for the settling parties to submit an amended redacted version.

　　　　　　　　　　　　　　　　Richard A. Posner
　　　　　　　　　　　　　　　　U.S. Circuit Judge

May 8, 2003